UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:14-cr-10157-1-MLW |
| | ) | |
| | ) | |
| DANIEL CATHCART | ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

**I.      INTRODUCTION**

    Daniel Cathcart had never been to jail before his arrest on January 16, 2014. He was 45 years old at the time, and his life to that point had consisted of high school, some college, employment, marriage, three children, and crucially, since 2008, drug abuse. His drug use started with prescription pills for back pain, and eventually grew to an addiction to heroin. Despite repeated efforts at treatment since his use began, periods of sobriety were always relatively short-lived. Driven by addiction, he first took his family's savings, and when the money was all gone, and with a 3-gram per day habit, he passed demand notes and robbed the banks in this case. Because of his crimes, he has spent the last 13 months of his life behind bars, and now, jointly with the government, recommends that he spend the next 41 the same way.

    The recommended sentence of 54 months is a modest variance from the bottom of the advisory guidelines range of 63 to 78 months. In Mr. Cathcart's case, four-and-a-half years

1

in prison and 3 years supervised release is "sufficient but not greater than necessary" to achieve the goals of sentencing. 18 U.S.C. § 3553(a)(1). His minor prior record, dedication as a father, severe personal consequences, and early willingness to plead guilty and accept punishment all support the Court's adoption of the binding plea agreement and joint recommendation.

## II.     APPLICATION OF SECTION 3553(a) FACTORS

A. Nature and Circumstances of the Offense

Over a period of just over a month, between December 10, 2013 and January 16, 2014, the defendant robbed seven banks by passing demand notes. His first attempt was aborted after he lost his nerve and walked out before obtaining any money. In that attempt and the subsequent completed robberies, the notes asserted a fantastic story of coercion by the kidnapping of a child, and referred to a non-existent gun. Witnesses at several of the robberies heard the defendant apologize for his actions. PSR ¶ 18. At the time of his crimes, he was living with his wife and children in Milton, and the money was being spent on heroin as fast as it came in. ¶ 24.

The nature and circumstances of Mr. Cathcart's offenses demonstrate an internal struggle with the immorality of his crimes. He created an outlandish story of coercion to manage his overwhelming shame, and even apologized to the tellers. In the struggle between his shame and his three gram per day heroin addiction, the addiction won out.

This internal struggle neither excuses Mr. Cathcart's crimes nor lessens their impact on the victims. However, it demonstrates a man who is amenable to reform, provided he

receives adequate treatment and works hard at maintaining his sobriety. The nature and circumstances of the offense call for both incarceration and supervised release. Fifty-four months behind bars is a significant loss of liberty, and 36 months supervised release will provide an additional incentive for Mr. Cathcart to work at sobriety. Such a sentence is appropriate considering the nature and circumstances of the offense.

B.  History and Characteristics of the Defendant

Since his arrest, Daniel Cathcart's children have been left without a father, and his wife without a husband. The effect of a person's absence is determined by the strength of his or her former presence. Daniel Cathcart's presence is described by those closest to him as positive, loving, and giving. Letters of support from his wife, sister, and mother are all included within Exhibit A.

His wife Miriam now bears a heavy burden of running a household on her own. Under the pressure of this situation, and with incarceration looming, it is unclear if their 18-year relationship and 12-year marriage will survive. ¶ 76. Yet despite the harm he has caused her, she has written movingly about Daniel's role in the family. Exhibit A. When the couple began dating, Miriam had a four-year-old daughter from a previous relationship, Jordan, who at the time was estranged from her biological father. Miriam's letter tells one story from early on, in which Daniel babysat Jordan while Miriam attended a class. When he arrived afterwards with Jordan on his shoulders, "this is when I knew he was the right man for both of us." Exhibit A.  That Miriam is able to remain appreciative of Daniel despite the harm he has brought to the family speaks volumes about his character.

After getting married, Daniel and Miriam went on to have two more children, a daughter who is now 11 and a son who is 7. As with any family, Daniel and Miriam have faced many struggles in raising their children. Miriam writes of some of these in her letter, including their daughter's complicated birth by emergency caesarean section, and their son's developmental disabilities. Miriam describes Daniel's responses to crises in the same way- calm, supportive, loving. At their daughter's birth, Daniel "stepped up to the plate for me this day." In regards to the difficulties of diagnosing and providing for their son, she writes "I can honestly say I would not have been as strong as I was if it wasn't for the soothing even toned calmness and reassurance from Dan." Exhibit A.

Daniel's mother and sister have written letters that describe him in similar terms. His older sister describes his "sense of humor and kind heart." She writes of the positive influence he has been as an uncle to her two daughters. His mother writes of his leadership during high school raising money for charity through various endeavors. Generosity, compassion, and commitment have been a hallmark of Daniel Cathcart's life. This explains the shock and devastation to his family upon learning of his crimes.

Daniel Cathcart has been an important member of his family and community despite what is now understood as underlying mental illness. At different times this mental illness has resulted in diagnoses of anxiety, Attention Deficit Hyperactivity Disorder, and Major Depression  PSR ¶¶ 84-87. Beginning in the early 2000s, Daniel sought treatment from various providers for these ailments¶ 85.

In hindsight it is clear that these emotional difficulties have impacted Mr. Cathcart dramatically. Despite his ability to find work in diverse fields, including as the vice president

of a tour company, software sales, and as a certified arborist, over the last 10 years he has not stayed in any one position for roughly longer than a year. PSR ¶109-116. In particular, his mental illness has proven to be a fertile ground for substance abuse, which was triggered by the use of prescription medication for back pain in 2008, when he was 40 years old. ¶ 96. When his prescription for Vicodin was no longer renewed, he sought Percocet and Oxycontin from the street market. Id. When that was no longer enough, he began to use heroin. ¶ 97.

Of course heroin provides only temporary solace, and Daniel's heroin use quickly worsened the underlying problems because it led to him losing jobs on more than one occasion. ¶¶ 110, 113. Mental illness, drug use, and employment instability formed an ever-strengthening feedback loop that led his bank robberies. The only way out was his arrest.

Indeed, Daniel Cathcart has acknowledged to the staff at Wyatt that his arrest in this case "saved [his] life." ¶ 88. He reported during the presentence interview that he is "horrified", "ashamed", and "embarrassed" by his crimes. ¶ 89. He wants to participate in any mental health and substance abuse treatment available to him. ¶¶ 89, 105. He currently participates in AA and has a sponsor who supports him. ¶ 104.

C.  The Need for the Sentence Imposed

In the context of the rest of Daniel Cathcart's life, the personal consequences he will suffer from his crimes, and his quick acceptance of responsibility and punishment in this case, 54 months incarceration and 36 months supervised release satisfies the need for the sentence in this matter. Fifty-four months in prison is a significant sentence for a first

conviction, and it reflects the gravity of his crimes. Just punishment and general deterrence are both served by this sentence.

The public should also be protected from further crimes of the defendant in determining the need for the sentence imposed. This will certainly be true throughout the years of Daniel Cathcart's imprisonment. The long-term protection lies in Mr. Catchart's ability, with the appropriate supervision and treatment, to maintain his sobriety. The lack of prior convictions throughout his 46 years speaks strongly to his law-abiding character outside the grips of a serious heroin addiction.

The treatment needed for Mr. Cathcart has already begun, as he is participating in AA while at Wyatt. ¶ 104. He is motivated to complete the 500 hour RDAP program during the remainder of any sentence. Such treatment will obviously continue throughout any period of supervised release as well.

Specific deterrence to Mr. Catchcart is served not only by the court's use of imprisonment and supervised release, but by the deep personal harm he has caused and suffered as well. It is unknown if his 18-year relationship with Miriam will continue. ¶ 76. He now has to visit with his children through a glass window, which initially caused his 6-year-old son to believe that his father had died. ¶ 77. His step-daughter, who has known him as a father figure since she was four, is so angry she will not speak with him. ¶ 78.  His family is experiencing significant financial and emotional difficulty as a result of his crimes. Daniel Cathcart has lost much, and will have much work to do to fix what he broke.

D.  The Applicable Sentencing Guidelines

The advisory guidelines in this matter call for a sentence of 63 to 78 months. There is no dispute between the parties as to the guideline calculations, and they served as an important reference point in negotiating the binding plea agreement. The result of those negotiations, informed by Daniel Cathcart's history, minor prior record, and continued support from his family, are a joint recommendation for a sentence 9 months below the bottom of the guidelines. This variance is well supported by the sentencing factors discussed above. Furthermore, Mr. Cathcart sought to accept responsibility and punishment from the beginning of this case. His initial appearance was March 27, 2014. By May 21st, less than 60 days later, he had signed a plea agreement in which he waived indictment and appellate rights. His early acceptance of responsibility has greatly reduced the government's burden of prosecution, and eliminated all disputes before the Court. This acceptance of responsibility is also in keeping with Daniel Cathcart's character. He understands the wrongfulness and gravity of his actions more than anyone else, and only wants to begin making amends, to the extent possible. For this, and all the other reasons above, the jointly recommended sentence is reasonable and appropriate, and should be accepted by the Court.

    Respectfully submitted,
    DANIEL CATHCART
    by his attorney

    */s/ Joshua Hanye*
    Joshua Hanye, BBO#661686
    FEDERAL PUBLIC DEFENDER OFFICE
    51 Sleeper Street, 5th Floor
    Boston, MA 02210
    617-223-8061
    Joshua_Hanye@fd.org

## Certificate of Service

I, Joshua Hanye, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants.

Date: <u>February 5, 2015</u>                                      <u>*/s/ Joshua Hanye*      </u>
                                                                                    Joshua Hanye